UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMERICAN HIGHWAY, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE TRAVELERS COMPANIES, INC., <br><br> Defendant. | Case No. 19 C 01660 <br><br> Judge Martha M. Pacold |

**MEMORANDUM OPINION AND ORDER**

  This is an insurance dispute between Travelers Property Casualty Company of America ("Travelers") and American Highway, Inc ("American Highway"). Travelers denied American Highway coverage, and American Highway initiated this suit in the Circuit Court of Cook County. [1] at 1.[1] Travelers removed the action to this court. *Id.* The court has subject-matter jurisdiction under 28 U.S.C. § 1441.[2] Before the court are Travelers's and American Highway's cross motions for

---

[1] Bracketed numbers refer to docket entries and are followed by page and / or paragraph numbers. Page numbers refer to the CM/ECF page number.

[2] Section 1441(a) allows a federal district court to hear a case removed from state court if the district court would have had original jurisdiction over the case had it been brought there originally. Travelers invokes this court's diversity jurisdiction. 28 U.S.C. § 1332. For the court to have subject-matter jurisdiction under the diversity statute, (1) there must be complete diversity between the parties and (2) the amount in controversy must exceed $75,000. *See Page v. Democratic Nat'l Comm.,* 2 F.4th 630, 636 (7th Cir. 2021).

  First, as to the amount in controversy: American Highway claims only $48,296.17 for its loss. [1] ¶ 7(a). However, it also seeks damages under Section 155 of the Illinois Insurance Code, 215 ILCS 5/155. *Id.* ¶7(b). These additional damages—$28,977.70—bring the complete amount in controversy to $77,273.87, which is above the statutory threshold. *See Domingo v. Prudential Ins. Co. of Am.*, No. 19 C 02566, 2020 WL 6545059, at *11 (N.D. Ill. Nov. 6, 2020).

  Second, there is complete diversity between the parties. American Highway is an Illinois corporation with its principal place of business in Illinois. [62] ¶ 1. Defendant Travelers is incorporated in Connecticut, and its principal place of business is also in

summary judgment. [53], [56]. Travelers's motion, [53], is granted and American Highway's motion, [56], is denied.

## BACKGROUND

In November of 2017, a company called Kerry Foods contacted freight broker C.H. Robinson to ship 19 pallets of a potato-based, food-grade product called ProtaStar from Illinois to California. [62] ¶ 10. C.H. Robinson selected American Highway, the plaintiff, to carry the load. *Id.* ¶ 11.

American Highway picked up the load at Kerry's distribution center in Illinois on November 29, 2017. *Id.* ¶ 13; *see* [62-2] at 1 (giving the date). Kerry sealed the trailer that contained the ProtaStar with a metal identification tag. [62] ¶ 14. Kerry seals the trailers to ensure that the load is not contaminated or otherwise adulterated during transit. [61] ¶ 14.

On the way to California, the trailer experienced a mechanical issue, so American Highway broke the trailer's seal and moved the ProtaStar to a new trailer with a new seal. *Id.* ¶ 15. Upon delivery, the recipient rejected the load because the original seal had been broken. *Id.* ¶ 17.

On January 5, 2018, American Highway issued a "Guaranty" to Kerry that stated, "[American Highway] represents and guarantees to Kerry that during the time the Goods have been in the possession of [American Highway] that such goods have not been tampered, contaminated, adulterated, or otherwise altered." [62] ¶ 23; [66] ¶¶ 46–47. The record is unclear on what a Guaranty is or why American Highway issued this one; the parties do not discuss its background. From the deposition of Kristina Sheahan, a Kerry employee, it appears that the Guaranty was a letter that American Highway wrote, and that C.H. Robinson passed along to Kerry, to explain what happened to the load. [54-2] at 45:1–46:1 (Sheahan Dep.). Regardless, American Highway does not dispute that it issued the Guaranty, and it does not dispute the Guaranty's contents. [62] ¶ 23; [66] ¶¶ 46–47.

Kerry made a claim to C.H. Robinson for a breach of their carriage contract due to the broken seal, and C.H. Robinson paid the full amount of the claim ($48,296.17) on September 17, 2018, without a suit or any adversarial proceeding. [62] ¶¶ 21, 26–27.

C.H. Robinson's contract with American Highway allowed C.H. Robinson to exercise a setoff right where American Highway's actions created liability for C.H.

---

Connecticut. [62] ¶ 2. Thus, American Highway is a citizen of Illinois, and Travelers is a citizen of Connecticut, making the parties completely diverse.

Robinson to its customers. [62] ¶ 29; [66] ¶ 52. To recoup its loss, C.H. Robinson exercised its setoff right by withholding $48,296.17 that it owed to American Highway for unrelated jobs. [62] ¶ 29; [66] ¶ 52, [61] ¶ 19.[3]

With this background, the court turns to the dispute between American Highway and Travelers.

Travelers was American Highway's insurer; Travelers issued American Highway a Commercial Inland Marine insurance policy (the "Policy"). [62] ¶¶ 30, 36; [54-10] at 19 (verified copy of the Policy). In the Policy, Travelers committed to paying American Highway "those sums you become legally obligated to pay as damages as a Motor Carrier, Warehouseman, Freight Forwarder, Logistics Service Provider or Other Bailee for direct physical loss of or damage to Covered Property caused by or resulting from a Covered Cause of Loss." [61] ¶ 30.

American Highway made a claim under the Policy in February 2018 for the money it lost when C.H. Robinson exercised its contractual setoff right. *See* [61] ¶ 20; *see* [62] ¶ 36 (stating that American Highway pursued a claim).

On May 25, 2018, Travelers denied coverage because "a missing seal does not constitute physical damages" under the Policy and there was no physical damage noted on the delivery date. [61] ¶ 22.

On October 30, 2018, American Highway asked Travelers to reconsider, and Travelers reconfirmed its denial on December 13, 2018. *Id.* ¶¶ 24–25.

This suit followed, and both parties moved for summary judgment.

## LEGAL STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id.* The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex*, 477 U.S. at 323.

---

[3] The parties agree that this setoff occurred "at some point," but there is no specific date in the record stating when the setoff occurred. [62] ¶ 29.

For cross motions aimed at the same claim or defense, the court adopts "a dual, 'Janus-like' perspective." *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 603 (7th Cir. 2015) (quoting *Shiner v. Turnoy*, 29 F. Supp. 3d 1156, 1160 (N.D. Ill. 2014)). For the first motion, the court views the facts and inferences in the light most favorable to the nonmovant. If the court denies the first motion, it turns to the cross-motion and gives the unsuccessful movant all the favorable factual inferences that it has just given to the movant's opponent. *Id.* (citing *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs., Loc. Union 150, AFL-CIO*, 335 F.3d 643, 647–48 (7th Cir. 2003)).

## DISCUSSION

American Highway seeks summary judgment on four issues: (1) its claim falls within the Policy's relevant coverage provision; (2) Travelers's pre-suit conduct estops Travelers from raising certain policy defenses; (3) the Carmack Amendment, 49 U.S.C. § 14706, preempts the state contract law governing this dispute and requires entering judgment in American Highway's favor; and (4) Travelers's conduct was "vexatious and unreasonable" under Section 155 of the Illinois Insurance Code, 215 ILCS 5/155.

In the cross-motion, Travelers argues that the Policy does not cover American Highway's claim, or in the alternative, other provisions in the Policy bar the claim.

### I. Coverage

Beginning with coverage: Travelers committed to paying American Highway "those sums you become legally obligated to pay as damages as a Motor Carrier, Warehouseman, Freight Forwarder, Logistics Service Provider or Other Bailee for direct physical loss of or damage to Covered Property caused by or resulting from a Covered Cause of Loss." [61] ¶ 30.

The parties do not dispute that the ProtaStar is the Covered Property. *Compare* [65] at 5 (American Highway: "It is undisputed that the Covered Property here is the cargo that American Highway was transporting, i.e., the food product ('ProtaStar').") *with* [60] at 9 (Travelers: "The 'Covered Property' is the goods inside the truck . . . ."). The crux of the parties' dispute is what "direct physical loss of or damage to Covered Property" means.

Further discussion follows, but in short, because there is no genuine issue of material fact that the ProtaStar did not suffer "direct physical loss" or "direct physical damage," American Highway's claim falls outside the Policy language and is not covered.

Sitting in diversity, the court applies the substantive law of the forum state—here, Illinois. *R3 Composites Corp. v. G&S Sales Corp.*, 960 F.3d 935, 941 (7th Cir. 2020).

In Illinois, "[a]n insurance policy is a contract, and the general rules governing the interpretation of other types of contracts also govern the interpretation of insurance policies." *Hobbs v. Hartford Ins. Co. of the Midwest*, 823 N.E.2d 561, 564 (Ill. 2005). American Highway bears the burden to show that its claim falls within the policy's coverage. *Addison Ins. Co. v. Fay*, 905 N.E.2d 747, 752 (Ill. 2009).

The court's task is to "predict how the Supreme Court of Illinois would resolve the issue." *Sandy Point Dental, P.C. v. Cincinnati Ins. Co.*, 20 F.4th 327, 331 (7th Cir. 2021). The Supreme Court of Illinois has not yet interpreted the Policy's operative phrase, "direct physical loss of or damage to Covered Property."

In *Sandy Point*, the Seventh Circuit interpreted a similar phrase, "direct physical loss or damage." The court noted that the phrase "direct physical" is most logically read as modifying both the words "loss and damage." *Id.* at 332*; see also Bradley Hotel Corp. v. Aspen Specialty Ins. Co.*, 19 F.4th 1002, 1006 (7th Cir. 2021) (same and interpreting same phrase here). Illinois appellate courts interpreting the same phrase in this case have also read the word "physical" as modifying both loss and damage. *See ABW Dev., LLC v. Cont'l Cas. Co.*, 203 N.E.3d 922, 929 (Ill. App. Ct. 2022); *Bottleneck Mgmt., Inc. v. Zurich Am. Ins. Co.*, 2022 IL App (1st) 211462-U, ¶ 31 (unpublished); *Ark Rest. Corp. v. Zurich Am. Ins. Co.*, 2022 IL App (1st) 211147-U, ¶ 16 (unpublished). Accordingly, under the Policy, damage to Covered Property must be physical for the insured's claim to be covered.

The Policy does not define the word "physical," so it must be given its "plain, ordinary, and popular meaning." *ABW Dev., LLC*, 203 N.E.3d at 929 (citation and internal quotation marks omitted). In *Traveler's Insurance Company v. Eljer Manufacturing, Inc.*, 757 N.E.2d 481 (Ill. 2001), the Supreme Court of Illinois held that a "physical" injury to property "occurs when property is altered in appearance, shape, color or in other material dimension, and does not take place upon the occurrence of an economic injury, such as diminution in value," *id.* at 500. Illinois courts have applied *Eljer*'s definition of the word "physical" to the coverage provision at issue here. *See, e.g.*, *ABW Dev.*, 203 N.E.3d at 929. Applying that definition here, for the coverage provision to encompass American Highway's claim, the ProtaStar must have been "altered in appearance, shape, color or in another material dimension." *Eljer*, 757 N.E.2d at 500. Again, economic injuries, such as diminution in value, do not trigger coverage. *Id.*; *see also* 10A Steven Plitt et al., *Couch on Insurance* § 148:46 (3d ed. 2022) ("The requirement that the loss be

5

'physical,' given the ordinary definition of that term, is widely held to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.").

There is no dispute that the ProtaStar was not altered in appearance, shape, color, or in any other material dimension, so American Highway's claim is not covered. American Highway issued a Guaranty stating that while the ProtaStar was in its possession, it was not "tampered, contaminated, adulterated, or otherwise altered." [62] ¶ 23. Instead, American Highway argues that the purpose of the seal that broke was to guarantee the ProtaStar remained unadulterated. According to American Highway, breaking the seal created the possibility of physical damage, making the ProtaStar worthless.

But the diminution of value of the ProtaStar by virtue of the *risk* of adulteration—not *actual* adulteration of the ProtaStar itself—is an economic injury. Thus, no reasonable jury could conclude that there was direct physical loss of or damage to the ProtaStar. *See Lakeshore Sail Charters, LLC v. Acadia Ins. Co.*, 168 F. Supp. 3d 1048, 1057 (N.D. Ill. 2016) (because Illinois law places the burden on the insured to provide that its claim falls within the coverage of an insurance policy, and insured's evidence would not allow it to meet its burden at trial, court granted insurance company's motion for summary judgment); *see also Varlen Corp. v. Liberty Mut. Ins. Co.*, No. 13 C 05463, 2017 WL 4278787, at *3 (N.D. Ill. Sept. 25, 2017), *aff'd*, 924 F.3d 456 (7th Cir. 2019).

American Highway raises two arguments for a broader reading of the Policy's coverage provision, but they are unpersuasive. First, American Highway urges that "damage" is a broad term that includes an injury or harm that reduces value. Applied here, American Highway argues that breaking the seal created a risk of adulteration, which rendered the Protostar worthless, making it "damaged" under the Policy. [58] at 9; [63] at 9, 13.

By itself, the word "damage" could cover non-physical injuries, such as an injury or harm that reduces value or usefulness. *See Am.'s Kids, LLC v. Zurich Am. Ins. Co.*, No. 20 C 3520, 2021 WL 4477872, at *4 (N.D. Ill. Sept. 30, 2021). But that is not what the Policy says. American Highway's reading does not account for the fact that the phrase "direct physical" modifies both "loss" and "damage" in the coverage provision.

Second, American Highway argues that the disjunctive "or" in the phrase "direct physical loss of or damage" shows that "damage" and "loss" mean different

6

things. As the Seventh Circuit explained, there is "no quarrel" with the argument that "damage and "loss" mean different things. *Sandy Point*, 20 F.4th at 332. One possible reading discussed in *Sandy Point* is that "loss" means complete destruction, while "damage" means some lesser harm that may be repaired. *Id.* But regardless of precisely what the words "loss" and "damage" mean, to trigger coverage, the relevant "loss" or "damage" must have been physical; as discussed previously, the adjectives "direct physical" modify both nouns. *See id.* The ProtaStar was not altered in appearance, shape, color, or in any other material dimension, so it could not have been physically lost or damaged.

## II. Estoppel

Next, American Highway contends that Travelers is estopped from raising any policy defense to coverage here because Travelers did not file a declaratory judgment action or issue a reservation of rights letter to American Highway. [58] at 5–7.

"Under Illinois law, if an insurer neither defends nor seeks a declaratory judgment defining its coverage obligation, 'it will be estopped from raising the defense of noncoverage in a subsequent action.'" *Altom Transp., Inc. v. Westchester Fire Ins. Co.*, 823 F.3d 416, 422 (7th Cir. 2016) (quoting *Country Mut. Ins. Co. v. Olsak*, 908 N.E.2d 1091, 1098 (Ill. App. Ct. 2009). But estoppel only applies when an insurance company breaches its duty to defend; if there is no duty to defend, insurers are not estopped from asserting a defense of noncoverage in a subsequent action. *Altom*, 823 F.3d at 422 (citing *Emps. Ins. of Wausau v. Ehlco Liquidating Tr.*, 708 N.E.2d 1122, 1135 (Ill. 1999)).

The Policy language controls whether Travelers had a duty to defend. "If the policy language is unambiguous, the policy will be applied as written, unless it contravenes public policy." *Windridge of Naperville Condo. Ass'n v. Phila. Indem. Ins. Co.*, 932 F.3d 1035, 1039 (7th Cir. 2019) (quoting *Hobbs v. Hartford Ins. Co. of the Midwest,* 823 N.E.2d 561, 564 (Ill. 2005)). A policy's words are ambiguous if they are "susceptible to more than one reasonable interpretation." *Wells v. State Farm Fire & Cas. Ins. Co.*, 173 N.E.3d 613, 621 (Ill. App. Ct. 2021) (quoting *Bituminous Cas. Corp. v. Iles*, 992 N.E.2d 1257, 1263 (Ill. App. Ct. 2013)).

The Policy states, in relevant part:

We have the right and duty to defend you against any "suit." However, we will have no duty to defend you against any 'suit' seeking damages to which this insurance does not apply. We may, at our discretion, investigate any occurrence and settle any claim or 'suit' that may result. . . . No other obligation or liability to pay sums or perform acts or

services is covered unless explicitly provided for under the Supplementary Payments Additional Coverage.

[62] ¶ 35. The Policy also defines the word "Suit":

"Suit" means a civil proceeding in which damages because of loss or damage to Covered Property to which this insurance applie[s] are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which you must submit, or submit with our consent; and

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

*Id*. According to American Highway, this language is ambiguous because "there is no language in the Policy limiting said duty [to defend] to cases only where [a] 'suit' is filed." [65] at 2.

This argument is not persuasive. The Policy triggers Travelers's duty only when there is a "suit," and Travelers has no other defense obligations unless provided under the Supplementary Payments section.[4]

The Policy language on Travelers's duty to defend is unambiguous, so the court must apply it as written. *Windridge*, 932 F.3d at 1039. No claimant filed a civil proceeding against American Highway at any time relating to the events here. [62] ¶ 37. Moreover, no party has pointed to evidence of an arbitration or alternative-dispute-resolution proceeding. Accordingly, Travelers's duty to defend was not triggered under the Policy, so Travelers may raise policy defenses here. *See Altom*, 823 F.3d at 422.

As a final matter on estoppel, American Highway contends that Travelers did not assert coverage defenses in its initial denials, so Travelers has waived its defenses here. [63] at 2. This argument is unpersuasive. "The mere omission of a

---

[4] American Highway does not address the applicability of the Supplementary Payments section, so has waived any argument that this section of the policy triggered a duty to defend. *See Henry v. Hulett*, 969 F.3d 769, 786 (7th Cir. 2020). Even absent the waiver, that section still does not address Travelers's duty to defend, but instead, lists expenses Travelers will pay to policyholders when certain conditions are met. *See* [54-10] at 19; [62] ¶ 30.

8

defense in a letter . . . does not constitute a waiver of the defense." *Loyola Univ. of Chi. v. Humana Ins. Co.*, 996 F.2d 895, 901 (7th Cir. 1993).

### III. Carmack Amendment

American Highway argues the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706(a)(1), governs this dispute rather than state law.

Congress enacted the Carmack Amendment to address the problem of patchwork regulation governing a carrier's liability to shippers concerning damaged goods transported in interstate commerce. *REI Transp., Inc. v. C.H. Robinson Worldwide, Inc.*, 519 F.3d 693, 697 (7th Cir. 2008). The Carmack Amendment aimed to solve this problem by codifying the "common law liability of carriers for damages to shippers' goods." *Pizzo v. Bekin Van Lines Co.*, 258 F.3d 629, 633 (7th Cir. 2001). To that end, the Carmack Amendment "generally preempts separate state-law causes of action" that fall within its reach. *REI Transp.*, 519 F.3d at 697.

The reach of the Carmack Amendment is extensive, but it is not limitless. 49 U.S.C. § 14706(a)(1) states (with emphases added as relevant):

> A carrier providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 shall issue a receipt or bill of lading for property it receives for transportation under this part. *That carrier and any other carrier* that delivers the property and is providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 or chapter 105 *are liable to the person entitled to recover under the receipt or bill of lading*. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported in the United States or from a place in the United States to a place in an adjacent foreign country when transported under a through bill of lading and, except in the case of a freight forwarder, applies to property reconsigned or diverted under a tariff under section 13702. Failure to issue a receipt or bill of lading does not affect the liability of a carrier. . . .

The Carmack Amendment applies to a carrier's liability to "the person entitled to recover under the receipt or bill of lading." *Id.*; *see Hairston Motor Co. v. Newsome*, 480 S.E.2d 741, 744 (Va. 1997) ("By its express terms, the Carmack Amendment applies only to the liability of a 'common carrier' under a 'receipt or bill of lading.'"). The Amendment does not preempt "claims that do not affect a carrier's liability for lost or damaged goods—such as a suit by a carrier against a 'person entitled to recover' for non-payment." *REI Transp.*, 519 F.3d at 698.

9

This case does not concern a carrier's liability. This is a suit brought by a carrier against its insurer under an insurance policy, not a suit brought by a person entitled to recover against a carrier under a receipt or bill of lading. Thus, Illinois state law governs this case, not the Carmack Amendment.

IV.     **Section 155 of the Illinois Insurance Code**

Finally, American Highway argues that Travelers violated Section 155 of the Illinois Insurance Code, 215 ILCS 5/155, by denying coverage. [58] at 13.

"Section 155 of the Illinois Insurance Code allows an insured to recover attorney fees when the insurer's denial of coverage or delay in payment is vexatious and unreasonable, or when the insurer behaves vexatiously and unreasonably during the course of coverage litigation." *TKK USA, Inc. v. Safety Nat'l Cas. Corp.*, 727 F.3d 782, 793 (7th Cir. 2013) (internal citations and quotations omitted). The court "must consider the totality of the circumstances when determining whether an insurer's conduct violates section 155." *Joseph T. Ryerson & Son, Inc. v. Travelers Indem. Co. of Am.*, 165 N.E.3d 439, 463 (Ill. App. Ct. 2020).

"It is neither vexatious nor unreasonable to litigate a 'bona fide dispute concerning the scope and application of insurance coverage,' let alone to deny coverage based on a position that prevails." *PQ Corp. v. Lexington Ins. Co.*, 860 F.3d 1026, 1038 (7th Cir. 2017) (quoting *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 200 F.3d 1102, 1110 (7th Cir. 2000)). When "no coverage is owed under the policy, there can be no finding that the insurer acted vexatiously or unreasonably with respect to the claim." *Joseph T. Ryerson & Son, Inc*, 165 N.E.3d at 457 (Ill. App. Ct. 2020); *Towne Place Condo. Ass'n v. Phila. Indem. Ins. Co.*, No. 17 C 1561, 2019 WL 3287837, at *8 (N.D. Ill. July 22, 2019) ("In any event, because Philadelphia Indemnity did not violate its obligations under the policy, it cannot be held liable for engaging in bad faith or improper practices under Section 155."); *J&L Pack, Inc. v. Nova Cas. Co.*, No. 20 C 3389, 2021 WL 3550299, at *6 (N.D. Ill. Aug. 11, 2021) (no damages under Section 155 if no benefits are owed). American Highway is not entitled to coverage, so Travelers could not have acted vexatiously or unreasonably by denying coverage.

American Highway also contends that Travelers acted vexatiously and unreasonably in other ways, such as responding to American Highway's request for reconsideration in an unreasonable amount of time. [58] at 13. Based on the totality of the circumstances in this case, Travelers's conduct

was not vexatious or unreasonable. Accordingly, American Highway is not entitled to Section 155 damages.

## CONCLUSION

The Policy does not cover American Highway's claim because there is no genuine dispute of material fact that there was no direct physical loss of or damage to Covered Property—the ProtaStar. Travelers may raise policy defenses here because there was no "suit" as defined under the Policy. The Carmack Amendment and the cases interpreting it do not apply to this case. Finally, American Highway is not entitled to damages under Section 155. Travelers's motion for summary judgment [53] is granted, and American Highway's motion for summary judgment [56] is denied. Final judgment will enter. Civil case terminated.

Date: August 14, 2023                    /s/ Martha M. Pacold